IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| VDV MEDIA CORPORATION, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *  Civil No. 3:05-CV-1877-H |
| | * |
| RELM WIRELESS, INC., | * |
| | * |
| Defendant. | * |

**MEMORANDUM OPINION AND ORDER**

Before the Court are RELM Wireless, Inc.'s ["RELM"] Motion to Compel Arbitration, Motion to Abate, and supporting brief and appendix, filed November 10, 2005; Plaintiff's Response to Defendant's Motion to Compel and to Abate, filed December 1, 2005; and RELM's Reply, filed December 14, 2005.

For the reasons that follow, RELM's motion is granted in its entirety.

**I. BACKGROUND**

Plaintiff VDV Media Corporation ["VDV"] and Defendant RELM are corporations conducting business in the area of wireless communication products and services. On December 23, 2003, RELM and VDV executed an agreement entitled "Independent Representative and Assumption Agreement" [the "IRA Agreement"]. The IRA Agreement set out obligations of the parties with regard to, among other things, sales and service of certain RELM products that the parties refer to as "ESAS Equipment." Specifically, Plaintiff contracted to market and sell the ESAS Equipment for Defendant RELM, and to provide related services. *See* Def's. App. at 0016-20. The IRA

Agreement also contained a clause requiring mutual nondisclosure of trade secrets; a covenant not to compete; and an arbitration clause. *See id.,* IRA Agr. §§ 11, 12, 15. Plaintiff now alleges that RELM subsequently sold the ESAS Equipment at below-market cost directly to a third party in violation of the IRA Agreement. On August 26, 2005, VDV filed this lawsuit in Texas state court for (1) breach of the IRA Agreement's covenant not to compete; (2) tortious interference with prospective business relations; and (3) misappropriation of trade secrets. On September 22, 2005, the case was removed to federal court on the basis of diversity jurisdiction.

RELM now asks the Court to order mandatory arbitration under the Federal Arbitration Act for each of VDV's claims.

## II. ANALYSIS

Under the Federal Arbitration Act, agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. When parties have agreed to arbitrate, federal policy strongly supports enforcement of such agreements. *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990); *Commerce Park at DFW Freeport v. Mardian Constr. Co.*, 729 F.2d 334, 338 (5th Cir. 1984); *Hawk v. Spaghetti Warehouse Restaurants, Inc.*, 2003 WL 21246138, *2 (N.D. Tex. 2003).

To determine whether arbitration should be compelled, the Court must determine: (1) whether the parties agreed to arbitrate the dispute; and (2) if so, whether any federal statute or policy renders the claim non-arbitrable. *Banc One Acceptance Corp v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). In this case, Plaintiff VDV does not argue that federal law or policy precludes arbitration. It is equally undisputed that the parties contracted in the IRA Agreement to arbitrate

disputes "arising []under" the Agreement.[1] *See* Def's. App. at 0019 (IRA Agr. § 15). The sole issue is whether the scope of this narrow arbitration clause encompasses some or all of Plaintiff's claims. *See Pennzoil Exploration and Prod. Co. v. Ramco Energy, Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998) (distinguishing "narrow" clauses requiring arbitration for claims "arising under" a contract, from "broad" clauses using language such as "related to" or "involving" a contract). Each claim is examined in turn.

  A. <u>Breach of Covenant Not to Compete</u>

Plaintiff's claim for breach of contract is based on RELM's alleged violation of the IRA Agreement's covenant not to compete. *See* IRA Agr. § 11. An alleged breach of the IRA Agreement is a claim clearly and indisputably "arising under" the Agreement and is thus subject to the Agreement's arbitration clause.[2] *See Coffman v. Provost 7 Umphrey Law Firm*, 161 F. Supp. 2d 720, 726 (E.D. Tex. 2001), *aff'd*, 33 Fed. Appx. 705 (5th Cir.), *cert. denied*, 537 U.S. 880 (2002). Plaintiff's cause of action for breach of contract is therefore referred to mandatory arbitration.

  B. <u>Tortious Interference with Prospective Contract</u>

Plaintiff's second cause of action is for tortious interference with a prospective business relationship. RELM's sale of the ESAS Equipment to a third party allegedly interfered with Plaintiff's sale of the same equipment to the same party, with whom Plaintiff claims it was negotiating.

---

[1] The arbitration clause reads, in relevant part: "The parties agree that any disputes or questions arising hereunder including the construction or application of the Agreement shall be settled by arbitration in Florida and in accordance with the rules of the American Arbitration Association." IRA Agr. § 15.

[2] In its Response, Plaintiff does not address arbitrability of the contract claim and therefore impliedly and appropriately concedes the issue.

When determining whether a tort claim falls within the scope of an arbitration clause, the district court must focus on the factual allegations in the complaint, not on the nominal characterization of the legal cause of action. *Harvey v. Joyce*, 199 F3d 790, 795 (5th Cir. 2000). Even "narrow" arbitration clauses may encompass claims other than for breach of contract. *See id.*; *Coffman*, 161 F. Supp. 2d at 730. The test in this Circuit for applying a contract's narrow arbitration clause to a tort claim is whether the tort is "so interwoven with the contract that it could not stand alone." *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 141 F.3d 243, 250 (5th Cir. 1998).[3]

In this case, Plaintiff's claim for tortious interference rests on precisely the same transaction that comprises its claim for breach of the IRA Agreement. Even more to the point, the IRA Agreement provides the sole basis by which Plaintiff was entitled to sell the ESAS Equipment at all. Absent the IRA Agreement, RELM can be accused of nothing more than selling its own equipment in the free market. *See Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726-27 (Tex. 2001) (holding that when two parties are competing for a business interest to which neither has superior entitlement, a cause of action for tortious interference cannot arise from merely competitive conduct, even if that conduct is "unfair"). It is the IRA Agreement itself that transforms the sale into a potentially tortious act. For that reason, Plaintiff's claim is interwoven with and arises, if at all, under the IRA Agreement. Like the claim for breach of contract, the claim for tortious interference with prospective business relationship is subject to arbitration.

---

[3] Although *Ford* was decided under the Texas General Arbitration Act, rather than under federal law, the court confirmed "no perceptible difference" between the standard applicable to both. *Ford*, 141 F.3d at 250 n.7. Subsequent district courts have on that basis applied the "interwoven" test under the Federal Arbitration Act. *See, e.g.*, *Coffman*, 161 F. Supp. 2d at 730.

C.  Misappropriation of Trade Secrets

In the third and final cause of action, Plaintiff alleges that RELM misappropriated Plaintiff's trade secrets. Specifically, Plaintiff asserts that RELM wrongfully disclosed Plaintiff's confidential cost information to the third party with whom they both were allegedly negotiating the ESAS Equipment sale. This claim, too, is interwoven with the contract at issue.

In the IRA Agreement, the parties included a clause requiring nondisclosure of each other's "Intellectual Property, any trade secrets and confidential and proprietary information." Def.'s App. at 0018 (IRA Agr. § 12). Plaintiff's claim for "misappropriation of trade secrets" is therefore nothing more nor less than an additional ground for breach of the IRA Agreement. As such it clearly "arises under" the contract and is subject to arbitration.

In opposition, Plaintiff argues that its trade secret claim would lie even in the absence of the IRA Agreement and thus "stands alone." *See Ford*, 141 F.3d at 250. A duty not to reveal another party's business information, however, does not arise in a vacuum.[4] Under law so settled as to be axiomatic, the owner of a trade secret "will lose his secret by its disclosure unless it is done in some manner by which he creates a duty and places it on the other party not to further disclose or use it in violation of that duty." *Furr's, Inc. v. United Specialty Advert. Co.*, 385 S.W.2d 456, 459 (Tex. Civ. App.--El Paso 1964, writ ref'd n.r.e.), *cert. denied*, 382 U.S. 824 (1965). In the absence here of the IRA Agreement, RELM had no duty to keep secret the cost information that Plaintiff divulged. Plaintiff's claim is therefore interwoven with the IRA Agreement and arises, if at all, under its terms.

---

[4] Plaintiff's argument to the contrary is misplaced. In the line of cases on which Plaintiff relies, the duty not to disclose trade secrets arises from the presence of an employment relationship, not present in this case. *See, e.g., Fox v. Tropical Warehouses, Inc.*, 121 S.W.3d 853, 858 (Tex. App.--Ft. Worth 2003, no writ).

5

A final issue, though not expressly raised in Plaintiff's Response, requires consideration. In Plaintiff's Original Petition, the cause of action for revealing trade secrets is predicated not on the IRA Agreement but rather on a previous contract between the parties, a nondisclosure agreement executed in February 2003 ["Nondisclosure Agreement"]. The Nondisclosure Agreement contained no arbitration clause; thus, its violation would not be arbitrable. The Court finds, however, that the Nondisclosure Agreement was expressly merged into and superceded by the IRA Agreement. *See* Def.'s App. at 0019  (IRA Agr. § 14) ("RELM and VDV each agree to adhere to the terms and conditions of the Nondisclosure Agreement between the companies dated February 20, 2003."); Def.'s App. at 0019 (IRA Agr. § 16) ("This Agreement contains the entire understanding and agreement of the parties with respect to this subject matter set forth herein, superseding any and all prior agreements, written and oral, between the parties regarding the same subject matter."); *see also Coffman*, 161 F. Supp. 2d at 728 (discussing and enforcing in the arbitration context a similar integration clause).  The allegedly wrongful disclosure of Plaintiff's confidential information occurred after the Nondisclosure Agreement was extinguished; and thus the IRA Agreement, with its arbitration clause, applies to the trade secrets dispute. *Cf. id.* (applying the arbitration clause of a superceded contract to a claim arising before the new integrated contract took effect).

Accordingly, Plaintiff's claim for  misappropriation of trade secrets arises under the IRA Agreement and is subject to arbitration by its terms.

D.      Stay Pending Arbitration

In its motion, Defendant requests a stay of these proceedings pending arbitration. Because all of Plaintiff's claims are subject to arbitration, the Court instead dismisses the case. *See Saturn*

6

*Distrib. Corp. v. Paramount Saturn, Ltd.*, 326 F.3d 684, 686-87 (5th Cir.2003) (discussing dismissal versus stay of a lawsuit when most or all claims are referred to arbitration).

### III. CONCLUSION

For the reasons given above, Defendant RELM's motion to compel arbitration is **GRANTED**. The Parties are hereby **ORDERED** to proceed to arbitration in accordance with the terms of the Independent Representative and Assumption Agreement of December 23, 2003.

Because no claims remain before the Court, this case is **DISMISSED WITHOUT PREJUDICE**.

SO ORDERED.

DATED:  February 27, 2006..

BAREFOOT SANDERS, SENIOR JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS